FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 SEP 19  P 4: 16

CLERK _____
SO. DIST. OF GA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JOSE GILBERTO SERRANO GOYCO,

    Petitioner,

v.

BUREAU OF PRISONS, Officials
Fiction Defendants #'s 1-10; CALLIE
P. FARR; R.E. HOLT; JOSE M.
VAZQUEZ, Warden; JEFFREY
HOLMES; SUSAN PAIGE; CHERIE
SUMMERS; TREVOR O. HOMPTON;
ANA WARGA; U.S. MARSHALS;
BANNUM PLACE OF ORLANDO, INC.;
HARLEY G. LAPPIN, and ALBERTO
GONZALEZ, Attorney General,

    Respondents.

CIVIL ACTION NO.: CV205-239

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Jose Gilberto Serrano Goyco ("Goyco"), an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), has filed a petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241. Respondent[1] filed a Response. Goyco filed a Traverse, Respondent filed a Response, and Goyco filed a Reply. For the reasons which follow, Goyco's petition should be **DENIED**.

## STATEMENT OF THE CASE

Goyco is presently serving a sentence of incarceration imposed by the United States District Court for the District of Puerto Rico. In the instant petition, Goyco contends that

---

[1] The only proper Respondent in a section 2241 petition is the warden of the facility at which a petitioner is incarcerated.

his right to due process was violated because the staff at a Community Corrections Center ("CCC") conspired to issue an incident report against him more than twenty four (24) hours after the alleged incident and to conduct a disciplinary hearing more than three (3) days after the incident. Goyco contends that these acts were against the applicable policy requirements. Goyco also contends that he was not present at the hearing, nor did he sign a waiver of attendance. Goyco asserts that the Disciplinary Hearing Officer ("DHO") and the Community Corrections Manager conspired to give him a disciplinary transfer, to disallow forty-one (41) days of good time credit, and to deny him an early release date. Goyco alleges that "Defendants" conspired to violate the Racketeer Influence and Corrupt Organization Act ("RICO") by sending him to FCI Jesup, where he was placed in a three man cell for thirteen (13) days and was then placed in the lowest level of living quarters.

Respondent avers that Goyco's due process rights were not violated. Respondent asserts that there is "some evidence" in the record to support the DHO's decision. Respondent contends that Goyco's claims regarding when the incident report was delivered and when the disciplinary hearing were held were not raised previously and there is no showing that he was harmed by any policy violations. Respondent also contends that Goyco was properly sanctioned for his behavior.

## DISCUSSION AND CITATION OF AUTHORITY

I.    **Goyco's Due Process Rights Were Not Violated.**

Goyco alleges that his right to due process was violated. Specifically, Goyco avers that he received a disciplinary report as a result of an incident which occurred two days earlier. Goyco asserts that he did not receive the incident report until thirty-six (36) hours

2

after the incident occurred, which resulted in him being restrained by the United States Marshals Service and deprived of his liberty. Goyco contends that a hearing was conducted five (5) days after the incident and that was contrary to the Bureau of Prisons' ("BOP") disciplinary procedures. Goyco also contends that he was not present at this hearing, nor did he sign a waiver, as required by the administrative procedure. Goyco further contends that the DHO conspired with the Community Corrections Manager to impose the following sanctions on him: a disciplinary transfer; disallowance of forty-one (41) good time credit, and the loss of his early release date. Goyco alleges that "Defendants" conspired to violate the RICO Act by sending him to FCI Jesup and placing him in a three man cell for almost two (2) weeks.

Respondent asserts that Goyco received a copy of the incident report, and a hearing was conducted on the report five (5) days later. Respondent submits that Goyco was at the hearing, made a statement in his defense, and did not request any witnesses or a staff representative to be at the hearing. Respondent also submits that the Center Disciplinary Committee ("CDC") Report details the evidence the CDC relied upon to find that Goyco was guilty of possession of a cell phone and offering a bribe to a staff member and the reasons for the recommended sanctions. Respondent avers that the DHO's imposition of sanctions and the reasons therefore are clearly articulated. Respondent contends that Goyco was notified of his appeal rights. Respondent asserts that there is "some evidence" in the record to support the CDC's finding that Goyco committed the prohibited acts. According to Respondent, the due process mandates were observed.

A plaintiff states a cognizable claim for the deprivation of his procedural due process rights when he alleges the deprivation of a constitutionally protected liberty or property

3

interest, state action, and constitutionally inadequate process. Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 2978-80, 41 L. Ed. 2d 935 (1974). In addition, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board is necessary to satisfy the requirements of due process. Superintendent, Massachusetts Corr'l Inst. v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985). The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455, 105 S. Ct. at 2774.

The evidence before the Court establishes that Goyco's due process rights were not violated. Goyco was given written notice of the charges approximately five (5) days prior to the CDC hearing and received notice of this hearing approximately forty-eight (48) hours prior to the hearing. (Resp't's Ex. C.) Goyco was also advised of his right to call witnesses and to present documentary evidence in support of his position. (Id.) In addition, it appears that, not only was Goyco advised of his right to receive a copy of the written findings of fact by the DHO, he actually received a copy of these findings. (Resp't's Ex. D.)

4

Finally, there is some evidence in the record to support the DHO's findings. The DHO considered Goyco's "contradictory statements", his acknowledgment of unauthorized cell phone use and possession, and Mr. Holmes' (the staff member who caught Plaintiff with the cell phone) statement before finding him guilty of the prohibited acts. (Resp't's Ex. E, p. 2.) It is not the role of this Court to determine the propriety of this evidence, only that there is some evidence in the record to support the findings of the DHO. See Hill, 472 U.S. at 455, 105 S. Ct. at 2774. Goyco's due process rights were not violated regarding the disciplinary sanctions and the hearing he received. In the constitutional analysis of a due process claim, it is of no consequence that the Code of Federal Regulations' directives were not followed to precision, as Goyco contends.[2]

Goyco's contention that he was not present at the hearing and that he did not sign a waiver of appearance form is without merit and unsupported by the record. The evidence before the Court reveals that Goyco was present at the CDC's hearing and that Goyco made a statement in his defense at the hearing. (Resp't's Ex. E, p. 2; Resp't's Ex. F, ¶ 3.)

## II. Goyco's Conditions of Confinement Claims are not Cognizable in a Section 2241 Proceeding.

Goyco asserts that, after he was transferred to FCI Jesup, he was placed in the Special Housing Unit in a three man cell and then was housed in another three man cell in the lowest living quarters level. Goyco contends that his housing assignment was a "repressary action and punishment with a callous indifference to Petitioner's medical conditions, all these as sequel of an illegal and void ab initio Due Process violation." (Pet.,

---

[2] Goyco's conclusory allegations of conspiracy are not supported, and the Court declines to address these allegations. See Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002) (noting that a petitioner must show, among other things, that there was an agreement to commit the acts).

5

p. 5.) Respondent asserts that these claims concern Goyco's conditions of confinement and are not cognizable in a habeas proceeding.

Courts should look beyond the terminology used in a pleading to its actual content before deciding the true nature of that pleading. See Fernandez-Roque v. Smith, 671 F.2d 426, 429 (11th Cir. 1982). In general, the distinction between claims brought as challenges to the inmate's conditions of confinement and those that must be brought as habeas petitions is now reasonably well settled. A writ of habeas corpus is the means by which prisoners may challenge the legality of their confinement. As noted by the United States Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). Habeas actions are those that explicitly or by necessary implication challenge a prisoner's conviction or the sentence imposed on him by (or under the administrative system implementing the judgment of) a court. Thus, for example, when a prisoner makes a claim that, if successful, would shorten his term of imprisonment, the claim must be brought as a habeas petition, not as a civil rights claim. Edwards v. Balisok, 520 U.S. 641, 645-46, 117 S. Ct. 1584, 1587-88, 137 L. Ed. 2d 906 (1997); Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383, 129 L. Ed.2d 283 (1994). In contrast, claims in which prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence, such as, for example, being denied adequate medical care during the period of incarceration, are civil rights actions, not habeas actions. See generally, Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 126 L. Ed. 2d 811 (1994); Abello v. Rubino, 63 F.3d 1063 (11th Cir. 1995). Based

on this settled distinction, Goyco's claims concerning his housing assignment at FCI Jesup and that officials at FCI Jesup were deliberately indifferent to his serious medical needs are far more analogous to those claims asserted in civil rights actions. This portion of Goyco's petition is not cognizable at this time.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Goyco's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DENIED**, in part, and **DISMISSED**, in part.

**SO REPORTED** and **RECOMMENDED**, this 19th day of September, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE